UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDWARD EUGENE YOUNG | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 07-34S |
| | : | |
| A.T. WALL, individually and in his capacity as the Director of the Rhode Island Department of Corrections | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Edward Young hereby objects to Defendant A.T. Wall's Motion to Dismiss (Doc. No. 3), filed on April 13, 2007. Plaintiff's Complaint should not be dismissed, because (a) it is not barred by the statute of limitations; (b) the federal takings claim is not foreclosed by *res judicata* or collateral estoppel; and (c) Defendant has not carried his burden of demonstrating beyond doubt that Plaintiff cannot establish that he is entitled to some form of relief. In further support of this objection, Plaintiff submits the attached memorandum of law.

Respectfully submitted,

PLAINTIFF EDWARD EUGENE YOUNG

By his Attorneys,

/s/ Andrew B. Prescott
Andrew B. Prescott (#3758)
Matthew J. Frankel (#7293)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
(401) 454-1000
(401) 454-1030 fax
aprescott@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: May 29, 2007

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I sent a copy of the within document via first class mail, postage prepaid, to the following persons, this 29th day of May, 2007:

Thomas A. Palombo, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903

/s/ Andrew B. Prescott

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDWARD EUGENE YOUNG | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 07-34S |
| | : | |
| A.T. WALL, individually and in his capacity as the Director of the Rhode Island Department of Corrections | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Edward Young submits this memorandum in support of his objection to Defendant A.T. Wall's Motion to Dismiss (Doc. No. 3), filed on April 13, 2007. Plaintiff's Complaint should not be dismissed, because (a) it is not barred by the statute of limitations; (b) it is not foreclosed by *res judicata* or collateral estoppel; and (c) Defendant has not carried his burden of showing, beyond a reasonable doubt, that Plaintiff cannot establish that he is entitled to relief. As an initial matter, Plaintiff's claims under 42 U.S.C. § 1983, by virtue of Rhode Island's "saving statute," R.I. Gen. Laws § 9-1-22, are not time-barred because (a) Plaintiff's section 1983 was dismissed for procedural deficiencies, ***not*** "on the merits," and (b) Plaintiff "commence[d] a new action upon the same claim within one year after the [dismissal]." R.I. Gen. Laws § 9-1-22.

Furthermore, Plaintiff's federal takings claim is not barred by *res judicata* or collateral estoppel as application of either doctrine would be fundamentally unfair since the District Court dismissed the takings claim in 2005 apparently without the benefit of briefing, argument, and on the basis of Plaintiff's initial *pro se* complaint – which was later supplanted by Second and Third

Amended Complaints filed by counsel – and because the Court never reached the merits of the issue in connection with summary judgment.

Finally, because Plaintiff's state law claims were specifically dismissed in the prior action "without prejudice," they cannot be deemed *res judicata.* Because Plaintiff's section 1983 claim based on procedural due process is not time barred, and this Court clearly has jurisdiction over that claim, this Court can, and should, exercise supplemental jurisdiction over those claims (which arise from the same facts and involve similar issues as the federal claims). Thus, Plaintiff's state law claims must survive Defendant's Motion to Dismiss, as well.

## I. Standard of Review

Plaintiff stipulates to the standard of review espoused by Defendant in his Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") at page 4.

## II. Argument

### A. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM UNDER 42 U.S.C. § 1983, BY VIRTUE OF RHODE ISLAND'S "SAVING STATUTE," R.I. GEN. LAWS § 9-1-22, IS NOT TIME-BARRED.

Rhode Island General Laws § 9-1-22 provides, in pertinent part:

> **§ 9-1-22 Extension of time after termination of action. –** If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same claim within one year after the termination.

Plaintiff's original action, C.A. No. 03-220S, was indisputably timely filed on or about June 4, 2003. The Court dismissed the action on February 27, 2006. The sole reason for the dismissal – which resulted from the Court's disposition of cross-motions for summary judgment – was that Plaintiff had failed to exhaust his administrative remedies as required by the Prison Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Magistrate Judge Hagopian's February 2, 2006 Report and Recommendation ("R&R") on the cross-motions for summary judgment stated:

> Since the undisputed [facts] demonstrate that the plaintiff failed to exhaust his administrative remedies on any of his claims, I recommend that the plaintiffs motion for summary judgement [sic] be denied, and the defendant's motion for summary judgment be granted on all of plaintiffs federal claims. "Congress clearly made the exhaustion of administrative remedies a necessary antecedent to filing a claim in federal court..." Medina-Colaudie v. Rodriauez-Mateo, 292 F.3d 3 1,36 (1st Cir. 2002).

The Magistrate Judge's R&R was adopted in full by District Judge Smith on February 27, 2006, and the case was closed that day.

Even assuming, ***arguendo***, both that Plaintiff's claims accrued in June 2003[1] and that the relevant statute of limitations is three years, see Def.'s Mem. at 4-5, Plaintiff's claims are not time-barred. "Federal law under § 1983 borrows a state's coordinate rules on tolling unless they are inconsistent with the federal Constitution and law, or with the federal policy underlying § 1983." Lopez-Gonzales v. Municipality of Comerio, 404 F.3d 548, 552 (1st Cir. 2005); Marrapese v. Rhode Island, 500 F. Supp. 1207, 1225 (D.R.I. 1980) (citing Board of Regents v. Tomanio, 446 U.S. 478 (1980)) ("The Supreme Court has recently held that reference to the state statute of limitations in § 1983 actions must include use of the state tolling rules."). The Court in Marrapese, in emphasizing this point, quoted Justice Blackmun's decision in Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462-64 (1974), at length:

> Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary,

[1] Plaintiff denies that this date is the proper measure for determining when his claim accrued. The State's improper taking of his accrued interest inflicts a "continuing and accumulating harm." Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502, (1968). Thus, Plaintiff submits that the continuing violation doctrine is applicable such that he can recover, at the very least – assuming that R.I. Gen. Laws § 9-1-22 does not "save" his entire claim – monies owed for the three years preceding commencement of the instant action. See Kuhnle Bros. v. County of Geauga, 103 F.3d 516, 522-523 (6th Cir. 1997); Baker v. F & F Inv. Co., 489 F.2d 829, 836 (7th Cir. 1973).

> the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

Marrapese, 500 F. Supp. at 1225 (quoting Johnson, 421 U.S. at 463-64).

Here, the timeliness of Plaintiff's current action must be determined in reference to Rhode Island law governing the tolling of statutes of limitations, including its so-called "saving statute," R.I. Gen. Laws § 9-1-22. See Lopez-Gonzales v. Municipality of Comerio, 404 F.3d at 552. Pursuant to § 9-1-22, Plaintiff's original action, C.A. No. 03-220S, was indisputably "timely commenced" and was "terminated" solely on procedural grounds, i.e., for failure to exhaust administrative remedies under the PLRA. It most certainly was ***not*** disposed of "on the merits" – the Magisrate Judge provided no other reason for granting Defendant's motion for summary judgment other than the PLRA exhaustion issue. See R&R at 4-5. Because Plaintiff re-filed the instant case, C.A. No. 07-34S, on January 29, 2007, well within one year of the February 27, 2006 "terminat[ion]" of his prior claim, § 9-1-22 operates to render the instant action timely.[2]

In virtually identical circumstances, the U.S. District Court for the Western District of New York recently held that its state's saving statute applied to render timely an otherwise time-barred section 1983 claim lodged by a prisoner. Allaway v. Mc Ginnis, 362 F. Supp. 2d 390, 393-97 (W.D.N.Y. 2005). In Allaway, the prisoner's section 1983 claim had originally been dismissed for failure to exhaust administrative remedies pursuant to the PLRA. Id. at 392-93.

[2] Plaintiff notes that Defendant has all but conceded that the instant case constitutes "a new action upon the same claim" for the purposes of section § 9-1-22. See Def.'s Mem. at 6.

After attempting to exhaust administrative remedies, the prisoner re-filed his action after the applicable statute of limitations had run and the defendants moved for summary judgment on, *inter alia*, that basis. Id. The court, in rejecting the defendants' motion for summary judgment on timeliness grounds, first noted that the "defendants ha[d] not considered the application of any of New York's tolling provisions relative to the statute of limitations," i.e., New York's saving statute, C.P.L.R. 205(a).[3] Id. at 393. The court then noted that "[d]ismissal of an action without prejudice for failure to exhaust administrative remedies . . . is precisely the type of termination subject to the safety net created by C.P.L.R. 205(a)."[4] Id. at 393-94. After satisfying itself that applying the saving statute would not be inconsistent with either section 1983 or the PLRA, the court held that the action was not-time barred by virtue of the saving statute. Id. at 395-97.

At least one other court has reached the virtually identical conclusion in similar circumstances. See Gashi v. County of Westchester, 2005 U.S. Dist. LEXIS 1215, at *25-38 (S.D.N.Y. Jan. 27, 2005); see also Wisenbaker v. Farwell, 341 F. Supp. 2d 1160, 1162-65 (D.

---

[3] New York C.P.L.R. 205(a) provides:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

[4] The fact that the original action in Allaway was dismissed "without prejudice," while in the instant case the original action was terminated via summary judgment, is irrelevant. For the purposes of Rhode Island's saving statute, the original action must simply be "terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits." R.I. Gen. Laws § 9-1-22. There can be no question that the first two exceptions do not apply, nor can it be disputed that a final judgment based on failure to exhaust administrative remedies is not one "upon the merits." See, e.g., Talley v. SEPTA, 1993 U.S. Dist. LEXIS 16831, at *7-9 (E.D. Pa. Dec. 1, 1993) (dismissal with prejudice for failure to exhaust not "on the merits" for *res judicata* purposes); Solar v. Merit Systems Protection Bd., 600 F. Supp. 535, 536 (S.D. Fla. 1984) (same).

Nev. 2004) (applying equitable tolling principles to render timely an otherwise time-barred section 1983 action by prisoner whose initial complaint has been dismissed for failure to exhaust under the PLRA).

In sum, because Plaintiff filed this action within one year of the termination of his previous case for failure to exhaust administrative remedies, Rhode Island's saving statute, R.I. Gen. Laws § 9-1-22, applies to render this action timely. Defendant's motion to dismiss on timeliness grounds should therefore be denied.

### B. PLAINTIFF'S FEDERAL TAKINGS CLAIM IS NOT BARRED BY *RES JUDICATA* OR COLLATERAL ESTOPPEL.

Plaintiff's federal takings claim is not barred by *res judicata* or collateral estoppel. Application of either principle to prevent review of Plaintiff's federal takings claim in the instant case would be fundamentally unfair. The initial dismissal of the federal takings claim was based on Plaintiff's original complaint, which was later supplanted by two amended complaints filed by counsel. According to the docket report, the Court also did not have the benefit of briefing or argument by counsel. Furthermore, both parties presupposed that the issue would be reviewed in connection with summary judgment in the prior action and thus fully briefed the issue at that stage. Because summary judgment was decided on the technical ground of failure to exhaust administrative remedies per the PLRA, fundamental fairness requires that this paramount issue be adjudicated once and for all in this action.

"The doctrine of *res judicata*, with its companion, collateral estoppel, are founded upon principles of fundamental fairness. The doctrine of *res judicata* is not absolute; a court should not adhere to the doctrine where its application would work an injustice." 46 Am. Jur. 2d Judgments § 470. "For purposes of issue or claim preclusion, courts resolve all doubts in favor of permitting parties to have their day in court on the merits of a controversy." Id.

Plaintiff's counsel's review of the docket report in the prior case, C.A. No. 03-220S, indicates that Plaintiff did not file an objection to Defendant's motion to dismiss, which ultimately resulted in the March 5th Decision. Nor does the docket report reflect that oral argument was held in connection with the motion to dismiss. Plaintiff's status as prisoner and then-*pro se* litigant surely put him at a disadvantage in having a full and fair opportunity to litigate the issue. See Stebbins v. Keystone Ins. Co., 481 F.2d 501, 512 (D.C. Cir. 1973) (Bazelon, J., concurring) (claim or issue preclusion principles should be carefully applied where the first adjudication involved a *pro se* litigant). After the March 5th Decision, Plaintiff's counsel provided the Court with additional citations and legal arguments in support of Plaintiff's takings claim, particularly in connection with the cross-motions for summary judgment filed in September 2005. The Court never had occasion to address these additional citations and arguments, however, because of the disposition of summary judgment on procedural grounds. Because all doubts should be resolved in favor of adjudication on the merits, the Court should decline to apply *res judicata* or collateral estoppel and allow Plaintiff to advance his takings claim in this litigation.

**C. DEFENDANT HAS NOT CARRIED HIS BURDEN OF DEMONSTRATING BEYOND DOUBT THAT PLAINTIFF IS NOT ENTITLED TO RELIEF.**

"A court may not dismiss a [claim] unless the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Berrios Nogueras v. Home Depot, 330 F. Supp. 2d 48, 49 (D.P.R. 2004) (quoting H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989)). Defendant has not carried his burden here.

**1. Plaintiff's § 1983 procedural due process claim is clearly viable.**

As discussed above, Plaintiff's § 1983 claim is not time-barred. Defendant has not advanced any other argument as to why the § 1983 claim should be dismissed. Thus, he has not carried his burden, and his motion to dismiss should be denied with respect to this count of Plaintiff's complaint.

**2. Plaintiff's federal takings claim is also clearly viable, because Defendant deprived Plaintiff of his property without just compensation.**

Defendant apparently concedes the possibility that *res judicata* or collateral estoppel may not be applicable to bar Plaintiff's takings claims, as Defendant also argues (seemingly in the alternative) that the takings claim should be dismissed on the merits. See Def.'s Mem. at 7-11. Plaintiff submits that a dispositive resolution of this issue is premature at this time. However, Plaintiff further submits that his takings claim states a valid cause of action entitling him to recovery. In support of this position, Plaintiff advances the following argument.

(A) The takings clause

In Pascoag Reservoir & Dam, LLC v. The State of Rhode Island, the court set forth the basic takings clause concepts as follows:

> The Fifth Amendment of the Constitution states that "private property shall not be taken for public use, without just compensation." U.S. Const. Amend. V. The Fifth Amendment applies to the Federal Government. . . . [T]he Takings Clause of the Fifth Amendment has been incorporated into the Fourteenth Amendment. Chicago, B&O R.R. Co. v. City of Chicago, 166 U.S. 226, 241, 41 L.Ed. 979, 17 S. Ct. 581 (1987). Therefore, the Takings Clause via incorporation applies to the states. See id.

217 F. Supp. 2d 206, 217 (D.R.I. 2002).

The Rhode Island Constitution provides the same protection to private property. Section 16 of Article I of the Rhode Island Constitution declares as follows: "Private property shall not be taken for public uses, without just compensation."

(B) Plaintiff's common law property interests

Plaintiff is in prison but he retains a wide array of constitutional and other legal rights.

> Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1958). But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime. There is no iron curtain drawn between the Constitution and the prisons of this country. Prisoners have been held to enjoy substantial religious freedom under the First and Fourteenth Amendments. Cruz v. Beto, 405 U.S. 319 (1972); Cooper v. Pate, 378 U.S. 546 (1964). They retain right of access to the courts. Younger v. Gilmore, 404 U.S. 15 (1971), aff'g Gilmore v. Lynch, 319 F. Supp. 105 (N.D. Cal. 1970); Johnson v. Avery, 393 U.S. 483 (1969); Ex Parte Hull, 312 U.S. 546 (1941). Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. Lee v. Washington, 390 U.S. 333 (1968). Prisoners may also claim that protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law. Hanes v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971); Screws v. United States, 325 U.S. 91 (1945).

Wolff v. McDonnell, 418 U.S. 539, 555-556 (1974).[5]

---

[5] The Supreme Court of Rhode Island has also emphasized inmates' retention of substantial rights by extending to inmates fourth amendment protection against unreasonable searches. See State v. Wilmot, 461 A.2d 401, 405-407 (1983) (rejecting the state contention that an inmate has no standing to object to a search of his cell and finding that the inmate had a court legitimate, though diminished, expectation of privacy in his cell.)

In this takings case, the question involves Plaintiff's property rights. This Court must look first to Rhode Island law, including of course the State's own common law,[6] to determine the nature and extent of Plaintiff's property interest in money paid to him for his work while in prison at the ACI. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Picard v. Members of the Employee Retirement Board of Providence, 275 F.3d 139, 144 (1st Cir. 2001) ("In evaluating whether a purported property right is entitled to constitutional protection under the Takings Clause . . . , this Court generally looks to state law as interpreted by the State's highest court.") In his money, and the interest generated by it, Plaintiff unquestionably has a substantial enough interest to warrant protection under the Takings Clause.

Rhode Island law requires the conclusion that Plaintiff has the requisite interest in his in-prison earnings. The analysis begins with the unsurprising precept that all Rhode Island citizens have a property interest in their money. See, e.g., In re James C., 871 A.2d 940, 942 (2005). Accordingly, unless Plaintiff's incarceration dramatically diminishes his fundamental property interest in money he earns, he has a "full" and not a "limited" property interest in his wages.

Nothing in the common law of Rhode Island suggests that the Plaintiff forfeited the bulk of his constitutionally cognizable property rights when he went to jail. To the contrary, the Rhode Island common law recognizes prisoners' property rights. In Anderson v. Salant, the Supreme Court of Rhode Island noted that the "rights of a prisoner in Rhode Island are far wider than those of a slave" and pointed specifically to the fact that "a convict can have an interest in property while a slave can not." 38 R.I. 463, 96 A. 425, 474-475 (1916) (emphasis added).

Plaintiff's earnings may not be exactly like money earned by other citizens, but any differences fall short of a legally meaningful distinction. In particular, the fact that the RIDOC

---

6 This Court cannot "revisit" decisions of the Rhode Island Supreme Court regarding "an issue of state law." Pascoag Reservoir & Dam, LLC v. The State of Rhode Island, 217 F. Supp. 2d 206, 212-213 (D. R.I. 2002).

could have chosen not to pay Plaintiff for his work logically makes no difference. Employers often make "gratuitious" payments to employees in the form of bonuses or monetary gifts. One would never even suggest that the employee who receives such a gratuitous payment from his employer lacks a constitutionally protectable property interest in the payment once received. Likewise, the fact that the RIDOC initially exercised its discretion and decided to pay Plaintiff for his labor should make no difference here.[7] While an employer has a legal obligation to pay for labor and the RIDOC does not, it is insufficient to announce that constitutional property rights do not exist merely because the circumstances under which the property (i.e., the money) was obtained differ.

This Court should not mimic the rather casual dismissal of inmates' common law property rights by the Eleventh Circuit Court of Appeals in Givens v. Alabama Dept. Of Corrections, 381 F.3d 1064 (11th Cir. 2004), cert. denied, 125 S. Ct. 2543 (U.S. 2005) and the Fourth Circuit Court of Appeals in Washlefske v. Winston, 234 F.3d 179 (4th Cir. 2000), cert. denied, 532 U.S. 983 (2001). The courts in these cases concluded that unlike private citizens who have a constitutionally protected property interest in wages earned from their labor, inmates do not.[8] In Washlefske, 234 F.3d at 184-185; Givens, 381 F.3d at 1068-1069. The courts relied on broad declarations regarding the right to force inmates to work without pay and inmates forfeiture of inmates' personal property rights. Id.

---

7 RIDOC clearly created an expectation and understanding in Plaintiff that he would be paid for his labor by having a practice and policy of paying. The common "understanding" that all citizens have when paid for their labor is that the money paid has become their property. This understanding is relevant to the assessment of the pivotal property right question. See Webb's, 449 U.S. at 161.

8 In Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1201 (9th Cir. 1998), the Ninth Circuit Court of Appeals decided that the trial court had erred by concluding that "'inmates in California do not have a protected property interest in the interest earned on [inmate trust accounts].'" The Court in Schneider concluded implicitly that the money deposited into the accounts by the inmates represented property under "traditional" or "old property rights" even though the relevant California statute denied the existence of a property right in the interest on the inmates' money. Id. at 1199-1201. The Eleventh Circuit's opinion in Schneider lacked full elucidation but reached the right result.

At least two compelling reasons exist to reject the Givens and Washlefske rationale. First, to the extent that both cases rely significantly on the ability of the state (i.e., the prison system) not to pay inmates for their labor in the first instance, the reasoning is seriously flawed. The question should be whether the state having decided to pay the inmate for labor, can trample the property rights that every citizen enjoys once paid for his or her labor. Second, it appears that the common law of Alabama and Virginia provided no basis to depart from centuries old English common law declarations regarding prisoners' absolute lack of property rights. Rhode Island law does provide such a basis.

In Rhode Island, prisoners' property rights have been recognized. The Rhode Island Supreme Court's pronouncement that "[a] convict is neither civilly dead, nor deprived of his rights of property" and that "a convict can have an interest in property" leaves no doubt that prisoners in Rhode Island have property rights . . . ." Anderson, 96 A. at 475. More recently, in Rhode Island Council 94 v. State of Rhode Island, the Supreme Court properly characterized the money it paid to prison inmates as "wages." 714 A.2d 584, 592 (1998) ("The wages received by prison inmates ($3 per day) are significantly less than the compensation paid to regular state employees.") (emphasis added). In short, Rhode Island's common law has evolved beyond the English common law and such evolution significantly alters the analysis.

(C) Plaintiff's statutorily created property interest

Section 42-56-22 of the Rhode Island General Laws mandates that funds in the inmates' frozen account be turned over to the inmate at the time of release. The General Assembly unequivocally characterized the money in the frozen account as inmates' property as follows: "[T]hose funds to be turned over to the prisoner at the time of his or her release from the institution, the funds being his or her property. . . ." (Emphasis added). Neither the Virginia

nor the Alabama statutes in Washlefske and Givens included such unequivocal labeling of the inmates' funds as the inmates' property.[9]

Washlefske and Givens incorrectly conclude that the restrictions on an inmates' right to spend and possess his earnings while incarcerated precludes the prisoners from garnering a constitutionally protected property interest in the monies. Givens, 381 F.3d at 1069; Washlefske, 234 F.3d at 185. In doing so, the courts distinguished Phillips v. Washington Legal Foundation, 524 U.S. 156 (1998) and Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155 (1980) in which the United States Supreme Court ruled that a constitutionally protected stake in principal sums of money attach to the interest generated on that money under the interest follows principal rule. Washlefske, 234 F.3d at 185-186; Givens, 381 F.3d at 1069.

The Givens and Washlefske decisions correctly note differences between inmate funds and non-inmate funds. But the decisions incorrectly conclude that the limitations on prisoners' use of their money means that they have no protectable constitutional property interest in the funds. The courts, however, have recognized constitutionally protected property interests in all types of property owned under various forms of substantial restriction. For example, under the zoning and housing laws, the owner of a house in a residential zone cannot manufacture commercial goods in the house or lease all of the rooms in the house out to different families. Yet the government cannot take the home without paying just compensation. An owner of a certificate of deposit, an IRA, or certain investment bonds cannot receive payment for the amount invested prior to the expiration of the term of the investment vehicle or some time set by law without significant penalties. Yet the government cannot take the principal or return on deposit without just compensation. A car owner must operate it only in accordance with traffic

---

[9] In Givens, the Eleventh Circuit quoted Alabama Code § 14-8-6 as stating, in part, "[u]pon his or her release all moneys being held by the department shall be paid over to the inmate."

laws, register it, and have it inspected. But the owner still has a constitutionally protectable property interest in the car.

Indeed, the United Supreme Court in Webb's rejected the concept relied upon by the Washlefske and Givens courts that inability to immediately use and enjoy funds extinguishes the property interest. In Webb's, the "creditor claimants" had no "right to the deposited fund until their claims were recognized and distribution was ordered." Webb's, 449 U.S. at 161-162. The Court declared that the "lack of immediate right, however, does not automatically bar a claimant ultimately determined to be entitled to all or a share of the fund from claiming a proper share of the interest, the fruit of the fund's use, that is realized in the interim." Id. at 162.

The RIDOC has restricted the Plaintiff's ability to use and spend the money that he has earned and deposited in his inmate accounts. Yet the Plaintiff retains under that statutory and regulatory scheme substantial property rights. Using the money in his open account, he can purchase goods from the prison commissary and therefore turn his earnings into consumable goods just like other citizens do. Or he can choose not to spend the money in the account and save it for the time of his release (after which he would be more or less free to spend the money in any way that he pleases).[10] Section 42-56-22(b) makes it clear that the Plaintiff has the right to use his funds "in the account for the payment of any court fees and court costs required to be paid for the filing, prosecution and defense of any action."

For the above reasons, Plaintiff urges this Court to join with the Ninth Circuit Court of Appeals in upholding an inmate's right to interest on money in a prison account. Plaintiff earned the money by working and like every other Rhode Island citizen enjoys a constitutional right to

[10] Plaintiff assumes that inmates released early on probation are restricted from buying otherwise legal goods (e.g., firearms or certain legal drugs). But the existence of such restrictions certainly do not obviate the constitutionally protectable property interest that they have in their money after release.

both the money he was paid for his work and the interest earned thereon. It is the fair and constitutionally required result. Thus, should the Court reach the merits of Plaintiff's takings claim at this early juncture of the litigation, the Court should deny Defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

**3. Plaintiff's state law claims are clearly viable and Defendant has advanced no reason why they should be dismissed.**

Although Defendant ostensibly seeks dismissal of all of Plaintiff's claims, see Def.'s Mem. at 5, Defendant has advanced no reason why Plaintiff's state law claims are not viable. For reasons consistent with the arguments above, the state law claims are timely and certainly were not adjudicated in the prior proceeding, having been dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). Thus, Defendant clearly has not carried his burden. This Court can, and should, exercise supplemental jurisdiction over Plaintiff's related state law claims, since they arise out of the same facts and involve similar issues of law. See 28 U.S.C. § 1367(a). Defendant does not mount any challenge to this Court's supplemental jurisdiction over the state law claims. Thus, Defendant's motion to dismiss should be denied with respect those claims, as well.

## III. Conclusion

For all the foregoing reasons, Defendant's Motion to Dismiss should be DENIED in its entirety.

Respectfully submitted,
PLAINTIFF EDWARD EUGENE YOUNG

By his Attorneys,

/s/ Andrew B. Prescott
Andrew B. Prescott (#3758)
Matthew J. Frankel (#7293)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
(401) 454-1000
(401) 454-1030 fax
aprescott@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: May 29, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I sent a copy of the within document via first class mail, postage prepaid, to the following persons, this 29th day of May, 2007:

Thomas A. Palombo, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903

/s/ Andrew B. Prescott