UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDWARD EUGENE YOUNG

v.                                                                                                                 C.A. NO. 07-034 S

A.T. WALL

REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Edward Eugene Young ("Young" or "Plaintiff"), an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint pursuant to 42 U.S.C. §1983 ("§1983") and state law. Young named as defendant A.T. Wall ("Wall" or "Defendant"), Director of the Rhode Island Department of Corrections ("RIDOC"), in his individual and official capacities. Young alleges that Wall violated his rights under both the United States and Rhode Island Constitutions by directing RIDOC to cease paying interest to inmates on the funds they hold in their inmate trust accounts. Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dockets #14 & #15). These matters have been referred to me pursuant to 28 U.S.C. §636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that Plaintiff's motion for summary judgment be denied, and Defendant's motion for summary judgment be granted.

UNDISPUTED FACTS

Plaintiff Young is currently a prisoner at the ACI. *See* Joint Statement of Facts ("JSF") (Docket #16) at ¶1. He was convicted of child molestation, first degree sexual assault in 1993, and is currently serving a forty five year sentence. *Id.* at ¶2. While incarcerated, Plaintiff Young has earned wages working at numerous ACI jobs, *id.* at ¶34, and has held monies in trust accounts maintained by RIDOC for the deposit of inmate funds (individually, "Inmate Trust Account"; collectively, the "Inmate Accounts Fund"), *id.* at ¶33.

RIDOC maintains the Inmate Accounts Fund for the deposit of inmate funds, including wages inmates earn while in prison and money inmates receive from outside sources. *Id.* at ¶5. The accounts are of two types – "available" and "encumbered". The former holds funds which inmates may use to pay for certain costs and services at the ACI or to transfer to an outside commercial bank account while the latter holds funds which, except for certain limited purposes established by statute, are set aside to be given to inmates upon release from prison. *Id.* at ¶6 &

1

¶7. By statute, at least twenty-five percent of an inmate's wages, up to a maximum of one thousand dollars, must be deposited into an "encumbered" account. R.I. Gen. Laws §42-56-22.

Pursuant to authority delegated by Rhode Island General Law §46-22-1 *et seq.*, Director Wall has promulgated three policies regarding interest earned on monies in the Inmate Accounts Fund (the "Interest"). The policies, and related practices and actions, were as follows:

(i) June 1999 – RIDOC Policy No. 2.17-1 ("Policy 1") enacted, directing Interest accrue to the depositing inmates in an equitable fashion, JSF at ¶11 & ¶12;

(ii) April 2000 – RIDOC Policy No. 2.17-2 ("Policy 2") replaced Policy 1, instructing Interest be distributed to inmates' individual accounts based on average daily balances in the accounts, *id.* at ¶13 & ¶14;

(iii) June 1, 2002 – posting of Interest to inmates' accounts discontinued, *id.* at ¶18;

(iv) June 20, 2002 – change in practice regarding Interest announced via a posted notice to prisoners and read by Plaintiff Young, *id.* at ¶19;

(v) August 28, 2002 – Policy 2 provisions directing Interest be credited to Inmate Accounts Fund suspended, *id.* at ¶21;

(vi) May 6, 2003 – Policy 2 repealed and RIDOC Policy No. 2.17-3 ("Policy 3") implemented (to be effective June 9, 2003), directing Interest accrue to the State of Rhode Island, *id.* at ¶23.

Director Wall implemented the change in practice and policy to provide the state funds to offset the cost of maintaining banking, commissary, and related services for inmates, estimated at approximately $325,000 annually. *Id.* at ¶9 & ¶17. Under Policy 3, inmates retain the right to deposit money from their available accounts into outside commercial bank accounts. *Id.* at ¶26.

## HISTORY OF PLAINTIFF YOUNG'S CLAIMS

In June 2004, Plaintiff Young filed a complaint, *pro se*, against Defendant Wall in a predecessor case challenging various aspects of prison life. The complaint included claims that the discontinuation of Interest payments on the Inmate Accounts Fund constituted a government taking without just compensation and violated Young's procedural due process rights. In March 2005, Judge Smith dismissed all of Young's claims for failure to state a claim upon which relief may be granted, with the exception of Young's procedural due process claim. *Young v. Wall*, 359 F.Supp.2d 84 (D.R.I. 2005)(hereinafter "*Young I*"). Young thereafter secured counsel, and filed amended complaints. However, it was undisputed that Young never exhausted the ACI's grievance procedure with respect to any of the claims listed in the Third Amended Complaint, as

required by the Prison Litigation Reform Act of 1995, 42 U.S.C §1997(e). *Young v. Wall*, C.A. No. 03-220S, 2006 WL 858085, at *3 (D.R.I. Feb. 27, 2006). Therefore, on February 27, 2006, Judge Smith granted summary judgment for Defendant Wall and dismissed the case. *Id.*

On January 29, 2007, after exhausting his administrative remedies, Plaintiff Young filed the instant Complaint, which is virtually identical to the Third Amended Complaint that was dismissed in the predecessor case. Here, Counts I and IV allege that the termination of Interest payments to the Inmate Accounts Fund without adequate procedural safeguards violated procedural due process under the Fourteenth Amendment of the United States Constitution and Article 1, §2 of the Rhode Island Constitution, respectively. Counts II and III allege that the appropriation of the Interest to the state constituted an unconstitutional taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, §16 of the Rhode Island Constitution, respectively. On July 6, 2007 and June 30, 2008, respectively, Judge Smith, who had ruled in *Young I* that ACI inmates did not have a constitutionally-protectd property right to the Interest under the Fifth Amendment, *Young*, 359 F.Supp.2d at 93, granted Defendant's motions to dismiss Young's takings claims in Counts II and III. Before the Court today are cross-motions for summary judgment regarding Counts I and IV.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)(citation omitted). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Here, the parties have submitted cross-motions for summary judgment along with a joint statement of material facts. As there are no genuine issues of material fact, this matter is ripe for decision on summary judgment.

### II. Claims Pursuant to §1983 and Rhode Island Constitution

Young asserts his Fourteenth Amendment cause of action pursuant to §1983, the Federal Civil Rights Act. In order to prevail under §1983, a plaintiff must demonstrate "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Chongris v.*

3

*Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987). Here, there is no dispute that Defendant Wall acted under color of state law. Accordingly, analysis of Young's claim that Wall violated his rights under the Fourteenth Amendment, as well as the Rhode Island Constitution, follows.

### III. Procedural Due Process Analysis

In *Young I*, Judge Smith ruled that inmates did not have a property right in the Interest for purposes of the Takings Clause, but denied Wall's motion to dismiss Young's due process claim regarding termination of Interest payments to inmates. *Young I*, 359 F.Supp.2d at 93. Judge Smith, who did not have Policy 3 before him, stated, "[I]t is quite possible that the Defendant's failure to distribute interest in accordance with [Policy 2] violated Young's right to procedural due process under the Fourteenth Amendment." *Id.* He further stated, "In denying the Defendant's Motion to Dismiss in part, this Court is merely saying that under Rhode Island law, Young has a limited right to the interest on his funds, and that Young has made out a claim that this interest is not being disbursed by the Defendant as required by RIDOC policy." *Id.* at 93 n.13. However, Judge Smith specifically declined to reach the merits, stating, "[I]it remains to be seen whether such interest was, in fact, appropriated by the Defendant ..., and if so, 'what process the [Defendant] provided, and whether it was constitutionally adequate.'" *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975 (1990)).

The parties have now presented facts to answer the questions Judge Smith left open in *Young I* regarding the appropriation of Interest, the process provided, and the constitutional adequacy of such process under Policy 2. In addition, the parties have presented evidence regarding Plaintiff Young's new claims that Defendant Wall also violated his due process rights by formulating Policy 3 without providing him adequate notice and a hearing. As discussed below, I find that, because Director Wall's termination of Interest payments to inmates and formulation of policy regarding the same applied to all inmates, rather than to particular individuals, Wall did not deprive Young of any constitutionally mandated procedural safeguards.

### A. Standard

In order to establish a procedural due process violation for deprivation of property under both the United States and Rhode Island Constitutions, the plaintiff must demonstrate that (i) he has a property interest arising from state law and (ii) defendant deprived him of his property interest without adequate legal process. *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 539 F.Supp.2d 513, 517 n.4 & 518 (D.R.I. 2008)(stating standard under Constitutions of United States and Rhode Island).

### B.     Property Interest

Plaintiff urges that the *Young I* ruling mandates a finding that he has a property right to continued Interest payments. He thus contends that the only question that need be addressed is the adequacy of the procedures RIDOC provided in connection with the termination of Interest payments and formulation of Policy 3 permanently denying Interest payments. Defendant, on the other hand, urges that Judge Smith's finding in *Young I*, that Young had a limited property right to the Interest, is not controlling because Judge Smith did not consider Policy 3. Wall claims that, as Young's property right in Interest payments was based solely on Policy 2, the suspension and replacement of Policy 2 abrogated any property right Young had in the Interest.

Nonetheless, this conflict need not be resolved. As set forth in the succeeding section, it is clear that, even assuming *arguendo* that Plaintiff Young had a limited property interest in the Interest for Due Process purposes, Defendant did not deprive Plaintiff of any constitutionally required procedural safeguards.

### C.     Procedures Due:  No Individualized Notice or Hearing Required
#### 1.     Class-wide Termination of Interest Payments in June 2002

It is undisputed that RIDOC stopped posting Interest to Young's Inmate Trust Account on June 1, 2002 in contravention of Policy 2. However, because Wall terminated the Interest payments "pursuant to a class-wide policy determination, as opposed to an individual determination of eligibility," the Due Process Clause does not require individualized notice or hearings for each affected person. *Hoffman v. City of Warwick*, 909 F.2d 608, 620 (1st Cir. 1990) (denial of seniority in employment to veterans without a hearing pursuant to class-wide policy of not enforcing statute providing for such seniority did not violate procedural due process); *see also Carson v. Block*, 790 F.2d 562, 566 (7th Cir.) ("[T]he failure to implement the statute at all was a legislative-type decision for which no individual hearing was necessary. Once the Department [of Agriculture] made this class-wide decision, it did not need to give the [plaintiffs] a further hearing.")(citations omitted)(alternative holding), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 669 (1986). Once RIDOC, under Director Wall, "adopted a uniform class-wide policy of not enforcing" Policy 2, the policy "ceased to provide an entitlement that could require individualized process to determine eligibility." *Hoffman*, 909 F.2d at 621.

Further, even if Director Wall's actions in June 2002 violated Policy 2 while it was still in force, "[s]ince this alleged wrongful conduct was followed on a class-wide basis, it amounts to no more than a failure to implement state law, which in itself does not violate the Due Process

Clause." *Id.*; *see also Roy v. City of Augusta*, 712 F.2d 1517, 1522 (1st Cir. 1983)("Mere violations of state law do not, of course, create constitutional claims").

### 2. Formulation and Implementation of RIDOC Policy Effectively Denying Interest Payments to Inmates

Similarly, neither the formulation nor the implementation of RIDOC Policy terminating the payment of Interest to inmates (*i.e.* the suspension of the relevant sections of Policy 2 and the promulgation of Policy 3) without first providing Plaintiff Young individualized notice and a hearing with a written decision violated Young's procedural due process rights.

#### a. Formulation of New Policy

First, Young has no due process right to have input into the formulation of RIDOC Policy. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 444-45, 36 S.Ct. 141 (1915)(individual had no due process right to be heard prior to the adoption of public act in which all are equally concerned); *Sperry v. Werholtz*, 321 Fed.Appx. 775, 779 (10th Cir. 2009)(prisoner had no right to a participate in procedure enacting policy requiring 10% of money prisoners received from outside sources to be placed in mandatory savings account, even though the requirement that he transfer his money was "effectively decided when the policy itself was enacted"); *Kirsch v. Smith*, 92 F.3d 1187, at *1 (7th Cir. 1996)(inmate had no right to a hearing regarding the establishment of prison policy denying pens to inmates in disciplinary confinement because "the establishment of an institution-wide policy does not give rise to a need for individual hearings"); *Kizas v. Webster*, 707 F.2d 524, 540, n.88 (D.C.Cir. 1983)("This claim of a due process right to participate in Bureau modifications of the [policy] confuses disputes involving an individual's entitlement to a benefit with situations involving across-the-board revocation of the benefit *itself*. The distinction is critical")(emphasis in original); *c.f. Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283, 104 S.Ct. 1058 (1984)(under a First Amendment analysis, "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy"). And, Young does not suggest that the enactment of the policy was an adjudicative, rather than legislative, action in which he was "exceptionally affected ... upon individual grounds." *Individual Reference Servs. Group, Inc. v. F.T.C.*, 145 F.Supp.2d 6, 45 (D.D.C. 2001)(citing *Bi-Metallic*, 239 U.S. at 446).

The cases Plaintiff Young cites in support of his claim that prisoners have a right to procedural safeguards with respect to regulations affecting their property are inapposite. Each of the cases involves procedures required prior to the application of a regulation to an individual's

6

specific circumstances, not procedures regarding the formulation of the regulation itself. *See, e.g., Hale v. Beard*, 168 Fed.Appx. 532, 534 (3rd Cir. 2006), *remanded to* No. 04-2704, 2006 WL 2927269 (M.D.Pa. Oct. 11, 2006), *vacated by Colon Montanez v. Beard*, No. 06-3520, 2009 WL 2873196 (3rd Cir. Sep 23, 2009)(regarding process required prior to implementation of legislation authorizing deduction from plaintiff's inmate trust account for restitution payment); *Walters v. Grossheim*, 525 N.W.2d 830, 831 (Iowa 1994)(regarding process required prior to the implementation of prison policy authorizing withdrawal of funds from inmate accounts to satisfy restitution obligations).

Further, the Supreme Court has recognized that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162 (2003). Director Wall explains that he revised RIDOC policy to provide financial support for banking, commissary, and related services for inmates. JSF at ¶9 & ¶17. It would be nonsensical to require RIDOC to afford each inmate an opportunity to present evidence at a hearing and have a written decision regarding the same prior to adopting the prison policy at issue here.

### b.     Implementation of New Policy

Second, any claim Plaintiff Young may be asserting that he has a right to individualized notice and a hearing prior to the implementation of RIDOC policy terminating the payment of Interest to inmates also fails. Young's limited property right to the Interest was based solely on RIDOC policy granting such right, and thus was akin to a state created benefit. *See Young I*, 359 F.Supp.2d at 93 (Young had no constitutionally-protected property right in the Interest, but rather, had a limited right defined by RIDOC policy). The initial decision by the state to create a property right in a particular benefit does not bind the state to provide such benefit forever. *Atkins v. Parker*, 472 U.S. 115, 129, 105 S.Ct. 2520 (1985)("The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits'")(citation omitted); *Story v. Green*, 978 F.2d 60, 63 (2d Cir. 1992). If the state enacts legislation eliminating the state-created benefit, absent any defect in the legislative process, "the legislative determination provides all the process that is due." *Atkins*, 472 U.S. at 130 (citations omitted); *see also Conway v. Searles*, 954 F.Supp. 756, 766-70 (D.Vt. 1997)(discussing defects in legislative process). Accordingly, a state clearly has the right to enact a policy-wide elimination of a

previously established state-created benefit without providing individualized notice or hearings. *See Bi-Metallic*, 239 U.S. at 445; *Correa-Ruiz v. Fortuno*, 573 F.3d 1, 14 (1st Cir. 2009); *Hoffman*, 960 F.2d at 620.

Further, such reasoning has been employed in the prison context to deny inmates' claims of due process violations. Specifically, courts have found that the legislative process, through either direct action by state legislatures or promulgation of regulations by prison officials pursuant to a legislative delegation of authority, provided adequate procedural safeguards. *See e.g., Sperry*, 321 Fed.Appx. at 779 (due process does not require hearing prior to implementation of policy requiring 10% of money prisoners receive from outside sources be placed in prisoners' savings accounts because prisoner received all the process that was due when prison policy was enacted); *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992)(adoption of a general rule prohibiting inmates from opening private bank accounts by the Department of Corrections, pursuant to a legislative delegation of authority, gives inmates all the procedure to which they are entitled); *Witherow v. Cortez-Masto*, No. 3:08-00363, 2009 WL 3156717, at *4 (D.Nev. Sept. 24, 2009)(prison not obligated to provide inmate with any particularized process before enforcing legislation requiring inmates to deposit all earned income into prison bank account because legislative act affects all inmates across-the-board).

Plaintiff Young disputes that the enactment of a policy change by prison officials should be treated as a legislative act for which individualized determinations are not required, emphasizing that he has no control over the legislature or prison officials. *See Bi-Metallic*, 239 U.S. at 445 (individuals' "rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule"). However, such reasoning is not persuasive. First, although incarcerated felons have no right to vote in Rhode Island, *see* Article II, § 1 of the Rhode Island Constitution, the lawful disenfranchisement should not create a due process right for prisoners to individualized notice and a hearing prior to the adoption and implementation of a prison policy. *See c.f. Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979)(the underlying purposes of our penal system requires the withdrawal or limitation of many privileges and rights of inmates during incarceration).

Second, Young overlooks additional reasons behind the concept that the "legislative determination provides all the process that is due." It is "impracticable" for citizens to have a direct voice in the enactment and implementation of laws. *Bi-Metallic*, 239 U.S. at 445. And, elimination of state-created benefits resulting from legislative decisions applicable to all

recipients does not create a risk of a mistaken or unjustified deprivation for which individualized safeguards are necessary. Under these circumstances, no individual facts need be assessed regarding the elimination of the benefit and there is "no action an affected individual could take to avoid the impact" of such legislation. *Youakim v. McDonald*, 71 F.3d 1274, 1290, n.14 (7th Cir. 1995); *see also Atkins*, 472 U.S. at 129 (legislation changing the scope of the entire food stamp program provided all the process that was due because it did "not concern the procedural fairness of individual eligibility determinations"); *Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Com'n*, 889 F.2d 929, 936 (10th Cir. 1989)(state employees had no right to hearing prior to implementation of legislation prohibiting them from obtaining liquor licenses where there were "no factual issues in dispute")(citation omitted); *Sperry*, 321 Fed.Appx. at 779 (hearing was unnecessary prior to implementation of prison policy applicable to all prisoners because there were no factual issues to resolve).

Here, the parties do not dispute that the Rhode Island legislature delegated authority to the RIDOC director to promulgate regulations regarding interest on the Inmate Accounts Fund. There is no suggestion that there was a defect in the process under which Policy 2 was suspended or Policy 3 was promulgated. Further, the property deprivation about which Plaintiff Young complains, the termination of Interest payments to his Inmate Trust Account, occurred as a direct result of RIDOC's change in policy eliminating the Interest payment to all inmates. There were no factual issues to resolve regarding Young's continued eligibility for such payments and no action Young could have taken to avoid the impact of the policy change. Accordingly, the legislative process by which the relevant portions of Policy 2 were suspended and Policy 3 was promulgated provided Young all the process he was due.

### 3. Procedures Adequate Under *Mathews* Balancing Framework

The same conclusion is reached under the balancing framework established by the Supreme Court in *Mathews v. Eldridge* for determining the adequacy of procedural protections provided by the state in connection with the deprivation of an individual's liberty or property rights. 424 U.S. 319, 335, 96 S.Ct. 893 (1976). Under *Mathews*, three factors must be considered in assessing the procedural protections: (i) the private interest affected; (ii) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (iii) the Government's interest, including the burdens that the additional or substitute procedural requirement would entail. *Id.*

Here, the private interest affected, the Interest payment to Young, is limited because (i) an inmate has no property right to the Interest other than the limited right created by RIDOC policy, *see Young I*, 359 F.Supp.2d at 93, and (ii) an inmate's right to utilize the Interest payment once the funds are in his Inmate Trust Account is restricted, *see id.* at 91; JSF at ¶6 & ¶7; *see also Mahers v. Halford*, 76 F.3d 951, 955 (8th Cir. 1996)(noting limited nature of inmates' right to funds for purposes of *Mathews* balancing test).

Additionally, as noted above, because the deprivation about which Plaintiff Young complains was occasioned by the elimination of Interest payments to all inmates, there was no risk of erroneous deprivation of the property right and, thus, no value to adding procedural safeguards. Plaintiff Young cites numerous cases in support of his argument that due process requires pre-deprivation procedures to avoid the risk of erroneous deprivation. However, the cases all deal with due process in the context of determinations of individual eligibility for a statutory entitlement or implementation of a statute to individual criteria, rather than the repeal or amendment of a policy conferring an entitlement. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985)(termination of public employment); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011 (1970)(termination of welfare benefits); *Hale*, 168 Fed.Appx. at 532 (deductions from inmate account for restitution payment); *Walters*, 525 N.W.2d at 830 (same). Further, approximately 20 days after it ceased disbursing Interest to inmates, RIDOC notified all inmates, including Young, of the change. Thus, other than the 20-day period, during which the amount of Interest that accrued on Young's Inmate Trust Account was clearly de minimis, *see* JSF at ¶37 & ¶38 (Interest for entire period between June 2002 and December 2008 on Young's account amounted to $60, according to Wall, or $500, according to Young), Young was on notice that he had to transfer money from his Inmate Trust Account to an outside interest-bearing commercial account in order to earn interest.

Finally, again as noted above, the state has a significant interest in maintaining administrative control over prisons in general as well as the banking, commissary and related services it provides to inmates at issue here. Substantial deference should be accorded to the professional judgment of prison administrators to define and execute the goals of the correctional system. *See Overton*, 539 U.S. at 132. Requiring Director Wall to provide individualized notice and a hearing to inmates prior to revising RIDOC policy and implementing the same would impose a substantial burden on the state's ability to effectively administer the prison.

## CONCLUSION

In conclusion, I find that Plaintiff Young has not demonstrated that Defendant Director Wall violated his due process rights under the United States or Rhode Island Constitution in connection with either (i) the termination of Interest payments to Young in contravention of Policy 2 or (ii) the formulation and implementation of RIDOC policy eliminating Interest payments to Young. Accordingly, I recommend that Plaintiff Young's motion for summary judgment on Counts I and IV of the Complaint be DENIED and Defendant Wall's motion for summary judgment on such counts be GRANTED. I therefore further recommend that the case be DISMISSED with prejudice.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
January 28, 2010