```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF RHODE ISLAND
```

_____
                                      )
EDWARD EUGENE YOUNG, SR.,              )
                                      )
            Plaintiff,                )
                                      )
       v.                             )    C.A. No. 07-34 S
                                      )
A.T. WALL, Individually and in        )
His Capacity as the Director of       )
The Rhode Island Department of        )
Corrections,                          )
                                      )
            Defendant.                )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Plaintiff in this case is a state prisoner incarcerated at the Adult Correctional Institutions of Rhode Island. He asserts that the Rhode Island Department of Corrections (hereinafter "RIDOC") violated his procedural due process rights when it decided to cease paying interest on bank accounts maintained by the RIDOC on the inmates' behalf. Both Plaintiff and Defendant have moved for summary judgment. On January 28, 2010, Magistrate Judge Hagopian issued a Report and Recommendation (hereinafter "R&R") that advised denying Plaintiff's motion and granting Defendant's motion. (R&R at 11.) Presently before the Court are Plaintiff's objections to the R&R. For the reasons

stated in the R&R and those explained below, the Court overrules Plaintiff's objections and affirms the R&R.

The R&R sets forth the full factual and procedural background for this case; the Court will only briefly summarize the dispute to frame its decision. From June 1999 until June 1, 2002, the RIDOC distributed interest to inmates' individual accounts. (Joint Statement of Facts ¶¶ 11, 12.) After deciding it could no longer afford to pay the interest, on June 1, 2002, RIDOC discontinued the practice as to all inmates. (Id. ¶ 18.) However, it did not provide notice of the policy change until June 20, 2002. (Id. ¶ 19.) Moreover, it was not until May 6, 2003, that RIDOC formally amended its regulations to reflect the elimination of interest payments to inmate accounts. (Id. ¶ 23.) At no time did the RIDOC provide a hearing for any inmates about the issue of the interest. Plaintiff claims that the RIDOC violated his procedural due process rights by failing to provide him with individualized notice or the opportunity for a hearing before (1) eliminating interest payments to inmate accounts or (2) formally adopting new prison policy codifying the elimination of interest payments. (See Pl.'s Objection to R&R at 1.) The R&R concluded that neither action triggered procedural due process protections. (R&R at 11.) Plaintiff now attacks those conclusions as unsupported by case law, but his

objections fail to rebut the reasoning in the R&R, which is fundamentally sound.

First, with respect to the RIDOC's creation of a formal policy not to pay interest on inmate accounts, it is clear that Plaintiff cannot complain of a procedural due process violation. The new policy affected not only Plaintiff, but all inmates with interest-bearing accounts. In general, policy decisions that eliminate a statutorily-created property right from an entire class of individuals do not warrant individual procedural due process protections. See Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole."). Such rights may be withdrawn without notice or a hearing because "due process 'property interests' in public benefits are 'limited, as a general rule, by the governmental power to remove, through prescribed procedures, the underlying source of those benefits.'" Kizas v. Webster, 707 F.2d 524, 539 (D.C. Cir. 1983) (emphasis in original) (quoting O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 796, 798 (1980) (Blackmun, J., concurring)).

3

Furthermore, as the First Circuit articulated in <u>Hoffman v. City of Warwick</u>, 909 F.2d 608 (1st. Cir. 1990), when a policy determination applies to an entire class, procedural due process does not require that the agency promulgating the regulation furnish individualized notice or grant the opportunity for individual hearings. <u>See</u> <u>id.</u> at 619-20 ("Where the legislature enacts general legislation eliminating statutory rights or otherwise adjusting the benefits and burdens of economic life, in the absence of any substantive constitutional infirmity, the legislative determination provides all the process that is due.") (internal quotation marks and citation omitted).

Plaintiff argues that the <u>Bi-Metallic</u> line of cases does not apply to the promulgation of RIDOC regulations because inmates cannot influence the formulation of prison policy. Inmates, Plaintiff reasons, lack the normal rights of citizens (<u>see</u> Mem. in Supp. of Pl.'s Objection to R&R at 5), and are not "protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule," <u>Bi-Metallic</u>, 239 U.S. at 445.

Nevertheless, the R&R correctly observed that "lawful disenfranchisement should not create a due process right for prisoners to individualized notice and a hearing prior to the adoption and implementation of a prison policy." (R&R at 8) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 546 (1979)(the underlying

4

purposes of our penal system require the withdrawal or limitation of many privileges and rights of inmates during incarceration)). That reasoning underlies decisions that have extended the Bi-Metallic rule to the prison context, notwithstanding the fact that prisoners do not have a say in correctional policies. See Sperry v. Werholtz, 321 Fed. Appx. 775, 779, (10th Cir. 2009) (unpublished decision) (rejecting procedural due process challenge to policy regarding maintenance of inmate savings account, and noting the prisoner had "no right to participate in the enactment process"); Kirsch v. Smith, 92 F.3d 1187, 1996 WL 414186 at *1 (7th Cir. 1996) (unpublished table decision) ("[T]he establishment of [a prison]-wide policy does not give rise to a need for individual hearings."). Without any contrary authority, and Plaintiff has cited none, there is no basis to conclude that the lack of a legislative process available to inmates changes the constitutional equation for Plaintiff.

Second, it is fair to say that with respect to the period of time following the suspension of interest payments but preceding notice of the unofficial policy change, Plaintiff's procedural due process claim is arguably a closer call. The reason is that in stopping payments without any notice to inmates, the RIDOC contradicted its stated policy. One might argue that this amounts to a break from a key assumption

5

underlying the Bi-Metallic rule: "[i]n considering this [procedural due process challenge], we must assume that the proper state machinery has been used," to implement the challenged policy. 239 U.S. at 445. Similarly, in Kizas, the Seventh Circuit permitted the elimination of statutorily-created benefits when such action was "limited . . . by the governmental power to remove, through prescribed procedures, the underlying source of those benefits." 707 F.2d at 539 (emphasis added; emphasis in original removed). Here, because the RIDOC stopped following the rule that was on the books, it is not clear that the agency either used the "proper . . . machinery" to suspend interest payments without notice Bi-Metallic, 239 U.S. at 445, or followed any "prescribed procedures" in doing so, Kizas, 707 F.2d at 539. The question then becomes: does the Bi-Metallic principle apply when a state agency breaks its own regulation?

As the R&R concludes, the answer appears to be "yes" in light of the First Circuit's decision in Hoffman. Hoffman concerns a decision by a state agency not to enforce a state statute granting seniority status to newly hired veterans. See Hoffman, 909 F.2d at 611. The statute went unenforced from its enactment and included a period during which the lack of enforcement preceded the official change of rule. See id. at 620 (noting procedural due process question prior to Repeal Statute). Nevertheless, the court in Hoffman determined that

6

"once the [agency] adopted a uniform class-wide policy of not enforcing [the statute], the statute ceased to provide an entitlement that could require individualized process to determine eligibility." 909 F.2d at 621.

Accordingly, Hoffman demonstrates that the Bi-Metallic rule applies even where an agency violates established policy. Indeed, in Hoffman, the agency ignored direct orders from the legislature that created it. Hoffman, then, appears to foreclose a finding for Plaintiff based on the RIDOC's violation of its own policy. Decisions from other circuits confirm that the rule for class-wide policy determinations governs actions by agencies that result in deprivations of property, even if not sanctioned by formal policies. See Kirsch, 1996 WL 414168 at *1 (finding quarrel over regulation entitling inmates to pens "neither here nor there" because "due process clause does not require states to interpret and to enforce their laws correctly"); Carson v. Block, 790 F.2d 562, 566 (7th Cir. 1986) ("[T]he failure to implement the statute at all was a legislative-type decision for which no individual hearing was necessary.").

Consequently, with no material basis to distinguish Hoffman from this case, the Court is constrained to reject Plaintiff's procedural due process claim.[1]

For the reasons stated in the R&R, and each of those set forth above, the Court adopts the R&R in full.  Defendant's motion for summary judgment is therefore GRANTED and Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  June 18, 2010

---

[1] Plaintiff attempts to distinguish Hoffman by arguing that because the agency never enforced the state statute, Hoffman concerns a governmental failure to act and not the deprivation of a vested property right.  By comparison, in this case, the RIDOC paid interest to the inmate accounts for over a year before amending its policy to stop payments.  Nevertheless, this fact does not advance Plaintiff's cause because it goes to the legitimacy of the property interest asserted.  On that front, the fact that Plaintiff has a protected property interest creates no basis upon which to distinguish the result in Hoffman.  In that case, the Court assumed for purposes of analysis that there was a protected property interest at stake. See Hoffman v. City of Warwick, 909 F.2d 608, 621 (1st Cir. 1990) ("[E]ven if [the statute] might have otherwise given rise to a statutory entitlement which could not be individually denied without a hearing, once the [agency] adopted a uniform class-wide policy of not enforcing [the statute], [it] ceased to provide an entitlement that could require individualized process to determine eligibility."); see also Young v. Wall, 359 F.Supp.2d 84, 93 n.13 (D.R.I. 2005) ("[U]nder Rhode Island law, Young has a limited right to the interest on his funds.").